1
2
3
4
5
6
7                   UNITED STATES DISTRICT COURT
8                 SOUTHERN DISTRICT OF CALIFORNIA
9

10   ANH PHAM, et al.,                   Case No.:  23-cv-1058-W-KSC

11                        Plaintiffs,
                                         **ORDER GRANTING IN PART,**
12   v.                                  **DENYING IN PART, AND**
                                         **CONTINUING IN PART MOTION**
13   UR JADDOU, Director, U.S. Citizenship   **TO DISMISS AND ORDER TO**
     and Immigration Services,            **SHOW CAUSE [Doc. 13]**
14
                          Defendant.
15

16

17        This case concerns the Government's delay in adjudicating nonimmigrant "U"

18   visas.  Plaintiffs seek a court order requiring the United Stated Citizenship and

19   Immigration Services ("USCIS") to adjudicate the Plaintiffs' U-visa petitions within

20   30 days, without any allegation regarding other petitioners awaiting agency adjudication

21   who are not parties to this case.  On August 21, 2023, Plaintiffs filed their First Amended

22   Complaint ("FAC").  (Doc. 7, *FAC*.)  On September 14, 2023, Defendant filed her

23   motion to dismiss.  (Doc. 13, *Motion*.)  On October 2, 2023, Plaintiffs responded in

24   opposition.  (Doc. 14, *Oppo*.)  On October 6, 2023, Defendant filed her reply brief.  (Doc.

25   15, *Reply*.)  The Court decides the matter on the papers submitted and without oral

26   argument.  *See* Civ.L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS IN**

27   **PART** and **DENIES IN PART** Defendant's motion to dismiss and enters an **ORDER**

28   **TO SHOW CAUSE**.  (Doc. 13.)

I.   **L**EGAL **B**ACKGROUND

The U.S. Department of Homeland Security's Secretary determines the admissibility to the United States of nonimmigrants, for a limited time or purpose, and the process by which nonimmigrants are admitted.  *See* 8 U.S.C. §§ 1101(a)(15), 1184(a)(1).  In October 2000, Congress created the "U Visa Program" under subsection 1101(a)(15)(U), to admit certain nonimmigrants who were victims of crime and who cooperated with law enforcement.  *See* Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000) (codified at 8 U.S.C. § 1101(a)(15)(U)); *see also* 8 C.F.R. § 214.14 (providing regulatory procedures for "alien victims of certain criminal activity" to apply to USCIS with Form I-918).  USCIS is the federal agency responsible for adjudicating visa petitions.  6 U.S.C. § 271(b)(1); *see also* 8 U.S.C. §§ 1103(a)(1), (g)(1) (explaining powers and duties), 1184(p)(6) (explaining process).

To be eligible for a U-1 visa, USCIS must determine that a principal U-1 petitioner (1) "has suffered substantial physical or mental abuse as a result of having been a victim" of statutorily qualified criminal activity, (2) has credible and reliable information about statutorily qualified criminal activity, (3) has been, is being, or is likely to be helpful to law enforcement investigating or prosecuting criminal activity,[1] and (4) the criminal activity violated the laws of the United States or occurred in the United States or its territories and possessions.  8 U.S.C. § 1101(a)(15)(U)(i)(I)–(IV).

Each year, only 10,000 nonimmigrant, principal U-1 visas are available.  8 U.S.C. § 1184(p)(2); 8 C.F.R. § 214.14(d).  Derivative U-2 visas are available to eligible family members of principal U visa holders only after the principal U-1 visa is granted.  8 U.S.C.

---

[1] A U visa petitioner must acquire U-status certification from a certifying agency regarding the helpful information the petitioner has contributed or will contribute to the investigation or prosecution.  8 C.F.R. § 214.14(c)(2)(i).  Plaintiffs allege that these certifying agencies are de facto "sponsors" of the petitioner's U status "because the law enforcement agency *needs* them to be present in the United States to assist in their investigations and prosecutions."  (*FAC* at 7–8 (emphasis in original).)

§ 1101(a)(15)(U)(ii); *see also id.* at § 1184(p)(2)(B); 8 C.F.R. § 214.14(f)(6)(i).
Derivative U-2 visas are not subject to the annual 10,000 visa cap.  8 U.S.C.
§ 1184(b)(2)(B).  However, derivative petitioners are not eligible for a U-2 visa unless
and until their principal U-1 family member's petition is granted.  8 C.F.R.
§ 214.14(f)(6)(i) ("USCIS may not approve Form I–918, Supplement A [petition for a
derivative U-2 visa] unless it has approved the principal alien's Form I–918 [petition for
principal U-1 visa].").

 USCIS implemented a regulatory waiting list for U visa processing in 2007.  (*FAC*
at ¶ 49 (quoting 8 C.F.R. § 214.14(d)(2)).)[2]  USCIS exceeded 10,000 principal U-1 visa
petitions for the first time in fiscal year 2010.  (*Id.* at ¶ 50.)  Demand for nonimmigrant
U-1 visas continues to outpace the limited number available.  (*See id.* at ¶¶ 50–56.)

## II. FACTUAL BACKGROUND

 Plaintiffs are twenty-four individual foreign nationals currently residing in the
United States.  (*FAC* at 3–5.)  Plaintiffs are all petitioners for either principal U-1 visas as
victims of crimes who provided law enforcement assistance (the "Principal Plaintiffs") or
derivative U-2 visas as qualified family members who hope to accompany or follow to
join their relative after the principal visa is granted (the "Derivative Plaintiffs").  The
Principal Plaintiffs are Anh Pham, Eustolia Yeraldin Rangel Garcia, Ashwajit Bhikkhu,
Praveen Salota, Sandip Chaudhari, Manuel Ariza Barrera, Darwin Ruiz, Rameshbhai

---

[2] The waiting list regulation states, "All eligible petitioners who, due solely to the cap, are not
granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such
placement.  Priority on the waiting list will be determined by the date the petition was filed with the
oldest petitions receiving the highest priority.  In the next fiscal year, USCIS will issue a number to each
petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible
and eligible for U nonimmigrant status.  After U-1 nonimmigrant status has been issued to qualifying
petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be
issued to new qualifying petitioners in the order that the petitions were properly filed.  USCIS will grant
deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are
on the waiting list.  USCIS, in its discretion, may authorize employment for such petitioners and
qualifying family members."  8 C.F.R. § 214.14(d)(2).

Patel, Ketankumar Chaudhari, Maria Siddiqui, Nazneen Begum, Janitze A. Marquez Lopez, Hosana Demacedo, Fouzan Mohammed, and Vipulkumar Patel.  (*Id.* at 11–13.)  The Derivative Plaintiffs are Hugo Isaac Chavez, Mayra Calix, Bhartiben Patel, Nimeshkumar Patel, Jameel Shaik, RAS, Jose Demacedo, JFCR, and Kushboo Patel.  (*Id.* at 11–13.)

Plaintiffs allege Defendant, the Director of USCIS, "skipped over" them in prioritizing the consideration and granting of available U visas or withheld or unreasonably delayed the adjudication of their petitions by issuing U visas to petitioners whose petitions post-date Plaintiffs' filing dates.  Plaintiffs allege that this action violated USCIS's own regulation, 8 C.F.R. § 214.14(d)(2), requiring that "the oldest petitions receive[] the highest priority."  (*Id.* at 10–11.)  The FAC alleges that, both, (1) all Plaintiffs filed their U-visa petitions on or before June 30, 2017, (*id.* at 3, 13) and (2) "[a]ll of the Plaintiffs in this case filed before July 31, 2017," (*id.* at ¶ 53.)  Plaintiffs allege that as of August 31, 2023, USCIS issued U visas for principal petitioners whose filing date is "as late as June 30, 2017."  (*FAC* at 10.)

Plaintiffs in this case comprise "eligible petitioners who, due solely to the cap, are not granted U-1 or U-2 [principal or derivative, respectively] nonimmigrant status, whether or not they've been placed on the waiting list."  (*Id.* at 13.)  "All of the Plaintiffs in this case filed before July 31, 2017," (*id.*; *see also id.* at ¶ 53), and "[a]ll Plaintiffs filed their Forms I-918 on or before June 30, 2017," (*id.* at 13.)  The FAC also alleges that "USCIS has issued U visas to hundreds of U visa applicants that filed their U visas after July 31, 2016."  (*Id.* at ¶ 61.)  Plaintiffs allege that they exhausted and "constructively exhausted" all administrative remedies.  (*Id.* at 6.)

Plaintiffs allege two claims.  The first, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, is based on USCIS's "unlawful withholding" or "unreasonable delay" of a "final decision on [Plaintiffs'] U visas," by jumping over their petitions or "skipping" their petitions in the process of adjudication.  (*FAC* at 3.)  Plaintiffs alleged this conduct is arbitrary and is an unlawful withholding or an unreasonable delay of their

final visa decisions under the APA.  (*Id.*)  The FAC pleads that this wrong deprives Plaintiffs of actual immigration status, deprives them of accruing time toward their adjustment of status application, and prevents them from acquiring advance parole to travel abroad.  (*Id.* at 14–15.)  The second claim alleged is for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, based upon USCIS's alleged APA violation.

The FAC fails to allege any individual Plaintiff's placement on, or status with regard to, the regulatory waiting list, set forth at 8 C.F.R. § 214.14(d)(2). (*See generally FAC.*)  Therefore, Plaintiffs do not allege whether, within the regulatory framework, they are (1) "qualifying petitioners on the waiting list" or (2) "new qualifying petitioners" whom the waiting list requires USCIS process after those on the waiting list.  *See* 8 C.F.R. § 214.14(d)(2) ("*After* U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed" (emphasis added)).  Instead, Plaintiffs allege that by skipping over them and deciding later-filed petitions, Defendant violated USCIS's own regulation that "the oldest petitions receive[] the highest priority."  *See* 8 C.F.R. § 214.14(d)(2).  Plaintiffs allege that USCIS's regulatory waiting list is irrelevant to the order of processing because "USCIS does not follow it," USCIS does not decide the oldest applications first, and USCIS has no uniform process for issuing U visas.  (*Compl.* at ¶ 104.)  Plaintiffs seek a court order compelling Defendant to adjudicate their petitions within thirty days, without regard to any other petitioners who are not a party to this case but who may be ahead of Plaintiffs, pursuant to the waiting list or otherwise.  The FAC is silent regarding non-party petitioners whether similarly situated to Plaintiffs or not.

## III.   SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based on a lack of subject matter jurisdiction.  Once the moving party challenges

jurisdiction, the burden is on the party asserting jurisdiction to prove otherwise. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "A jurisdictional challenge under Rule 12(b)(1) may be made on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Here, the Court considers the extrinsic evidence submitted by Defendant, three USCIS final decisions on three Plaintiffs' petitions. (Doc. 13-1; Doc. 16.) These three final agency decisions are government records whose accuracy cannot reasonably be questioned. Plaintiffs do not object to them. Moreover, the FAC does not complain about the outcome of Plaintiffs' petitions (*i.e.*, whether USCIS grants or denies them); rather, the FAC complains that the petitions remain pending without final agency decision while other, later-filed petitions receive decisions. As such, the Court takes judicial notice of the three Exhibits, under Fed. R. Evid. 201(b)(2), (c)(1), on its own motion.

The federal district courts have "original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When a court lacks subject matter jurisdiction, it lacks the power to proceed, and its only remaining function is to dismiss. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs' FAC alleges two causes of action, the first arising under the APA, 5 U.S.C. §§ 553, 706, and the second seeking attorney fees under EAJA. The claims arise under federal law.

Defendant, however, argues that the Court lacks subject matter jurisdiction because Plaintiffs' claims are moot for two reasons: (1) Plaintiff Praveen Salota's claim is moot because USCIS denied her U-visa petition in 2021; and (2) all of Plaintiffs' claims are moot because (a) during the prior fiscal year, in effect as of the filing of Plaintiff's Complaint and Defendant's Motion, the congressional cap on U visas had been exhausted such that USCIS could not grant more and (b) during the current fiscal year, USCIS will continue to process all petitions according to the first in, first out policy, including

Plaintiffs.  In her Reply brief, Defendant also challenges the Court's subject matter jurisdiction on grounds of standing.

Standing is a critically important jurisdictional limitation, "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1991); *Ya-Wen Hsiao v. Scalia*, 821 Fed App'x 680, 682 (9th Cir. 2020).  The federal courts must consider it even if the parties do not raise it.  *United States v. Hays*, 515 U.S. 737, 742 (1995).  Plaintiffs bear the burden of establishing standing.  *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).  Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  "[S]tanding and ripeness pertain to a federal courts' subject matter jurisdiction."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  To satisfy Article III standing, a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *See Friends of the Earth, Inc. v. Laidlaw Evnt'l Srvs. (TOC), Inc.* 528 U.S. 167, 180–81 (2000).  "[T]o establish standing under the APA[, as here,] a plaintiff must show injury in fact, causation, a likelihood of redressability, and that he falls 'within the zone of interests to be protected or regulated by the underlying statute in question.'" *Catholic Charities CYO v. Chertoff*, 622 F.Supp.2d 865, 879 (C.D. Cal. 2008) (quoting *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1001 (9th Cir. 1988)).

"Mootness is a jurisdictional issue.  It can be described as the doctrine of standing set in a time frame."  *Maldonado v. Holder*, 781 F.3d 1107, 1112 (9th Cir. 2015) (cleaned up).  "For a dispute to remain live without being dismissed as moot, '[t]he parties must continue to have a personal stake in the outcome of the lawsuit.'"  *Id.* at 1112 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990) (internal quotation marks omitted)).  "It is the doctrine of mootness, not standing, that addresses whether an

intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607, 213 L. Ed. 2d 896 (2022) (cleaned up).  "The distinction matters because the Government [challenging jurisdiction], not [Plaintiffs], bears the burden to establish that a once-live case has become moot." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

### A.   <u>Final Decision On A Plaintiff's Petition Moots That Plaintiff's Claims</u>

USCIS rendered its final decision on three individual Plaintiffs' petition, and those final decisions were proffered to the Court.  The claims of those individual Plaintiffs are moot and must be dismissed for lack of subject matter jurisdiction.  USCIS rendered its final decision and denied Plaintiff Praveen Salota's U-visa petition on September 22, 2021.  (Doc. 13-2, *Motion Exhibit*, Exh. 1.)  Salota conceded in briefing that his petition was denied and that his claims are therefore moot.  (*Response* at 2 n.1.)  "Plaintiffs agree that Plaintiff Salota's delay claim is moot []." (*Id.*)  While Defendant's motion was fully briefed and pending, Defendant also submitted to the Court the final decisions on the petitions of Plaintiffs Sandip Chaudhari, dated November 28, 2023, and Manuel Ariza Barrera, dated December 1, 2023.  (Doc. 16, Exh. A, B.)  All of Plaintiffs' claims seek an end to any unlawful withholding or unreasonable delay of a final U-visa decision and an order that USCIS must make a final U-visa decision within thirty days.  The individual plaintiffs who have received USCIS's final decision on their petitions have received the relief requested.  Accordingly, such individual plaintiffs no longer have "a personal stake in the outcome of the lawsuit," rendering their claims moot.  For these reasons, the Court **GRANTS IN PART** the Rule 12(b)(1) motion and **DISMISSES** Plaintiffs Praveen Salota, Sandip Chaudhari, and Manuel Ariza Barrera from this case for lack of subject matter jurisdiction.

**B.** **The Remaining Principal Plaintiffs' Claims Are Not Moot**

The remaining Principal Plaintiffs' claims are not moot because the parties continue to have a personal stake in the outcome.  Defendant argued that all claims are moot because the exhaustion of 10,000 U visas (during the fiscal year in effect at the time the motion was filed) precluded any action by USCIS.  *See* 8 U.S.C. § 1184.  According to Defendant, the agency lacked any authority to grant any further U visas during that fiscal year.[3]  However, Defendant's first mootness argument is itself rendered moot by the passage of time.  The beginning of new FY2024, and the renewed pool of 10,000 U visas, occurred before the motion was fully briefed.  The parties agree that, on October 1, 2023, USCIS's new fiscal year began, making available 10,000 new U visas under the annual statutory cap.  (*See Motion* at 10; *Response* at 2.)[4]  Defendant can now issue FY2024 final decisions granting and denying U visas and is not barred by any statutory cap on grants until the 10,000 cap is exhausted for this fiscal year.  Accordingly, the parties continue to have a personal stake in the outcome: Defendant's stake is in the processing of U visa petitions pursuant to law, regulations, policy, and procedure; Plaintiffs' stake is in receiving, according to law, regulations, policy, and procedure, a final decision on their pending petitions for U visas.  The Court cannot conclude that this case is moot when (1) the parties agree that some number, greater than zero and less than 10,000, of U-1 visas are currently available under the statutory cap and (2) the parties continue to dispute the speed at which (or the process by which) USCIS should adjudicate those pending U visa petitions.

---

[3]     The parties did not address, and the Court does not consider, USCIS's continuing ability to issue denials to any petitioners whose petitions did not meet the eligibility requirements for U visas, even after the annual allotment of 10,000 visas is used.

[4]     The federal government's fiscal year runs from the first day of October of one calendar year through the last day of September of the next calendar year.  Fiscal Year 2024 ("FY2024") runs from October 1, 2023, through September 30, 2024.

Next Defendant argues that the case is moot, even after the October 1 availability of 10,000 new U visas, because USCIS now resumes processing petitions on a first in, first out order, including Plaintiffs' petitions.  Defendant argues that directing USCIS to process Plaintiffs' petitions within 30 days would require USCIS to process Plaintiffs' petitions "out of order."  That may be so, but it does not address how Plaintiffs' claim for relief is moot.  Defendant also argues that USCIS has "initiated the adjudication process," and therefore, the Court cannot provide the requested relief.  However, Defendant does not provide any declaration or other evidence with respect to the named Plaintiffs that would permit the Court to state that the "agency [has begun] to spin its bureaucratic cogs toward decision" on any specific Plaintiff's application.  *See Markandu v. Thompson*, No. 07-CV-4538, 2008 WL 11510675, at *3, 2008 U.S. Dist. LEXIS 46136, at *7 (D.N.J. June 11, 2008) (addressing a mandamus action where defendant agency filed a declaration averring that a denial was forthcoming on the plaintiff's own application for asylum.)  For these reasons, the Court has subject matter jurisdiction over the remaining Plaintiff's APA claim and any resulting EAJA fees.

## C.  <u>Derivative Plaintiffs' Claims May Not Be Ripe</u>

Defendant raised, as part of her Rule 12(b)(6) motion, an issue that calls into question the Court's subject matter jurisdiction over the Derivative Plaintiffs' claims in the FAC.  Neither party briefs this issue—that is, whether the Court has jurisdiction over Derivative Plaintiffs' claims and, in particular, whether the Derivative Plaintiffs' claims are ripe where the associated principal petitions are not yet granted.  Having an independent obligation to review its own jurisdiction, the Court determines that additional briefing is prudent.

Plaintiffs allege that they are all currently residing within the United States.  Accordingly 8 C.F.R. § 214.14(f)(6)(i) governs USCIS's ability to grant the petitions of Derivative Plaintiffs.  This regulation prohibits USCIS from granting any Derivative Plaintiff's petition for a U-2 visa unless and until that person's associated principal

petition is granted.  8 C.F.R. § 214.14(f)(6)(i).  The federal courts have an obligation to review their subject matter jurisdiction, including ripeness and mootness, whether it is raised by any party.  *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1084 (9th Cir. 2022) (citing *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015); *Burrell v. Burrell (In re Burrell)*, 415 F.3d 994, 997 (9th Cir. 2005)).  Article III's case or controversy requirement depends in part upon the ripeness doctrine.  The requirement that a case or controversy be ripe for adjudication is "peculiarly a question of timing" that "prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on the parties."  *18 Unnamed "John Smith" Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

The FAC alleges that all Plaintiffs' petitions are awaiting final decision "whether or not they've been placed on the waiting list."  (*FAC* at ¶ 88.)  The Derivative Plaintiffs seek a court order mandating USCIS adjudicate their petitions within thirty days.  (*Id*. at 122.)  However, the processing of derivative petitions is not identical to the processing of principal petitions because a derivative (U-2) visa may not be granted before the associated principal petition is granted.  8 C.F.R. § 214.14(f)(6)(i) ("USCIS may not approve Form I-918, Supplement A unless it has approved the principal alien's Form I-918.")  Although the Derivative Plaintiffs are not subject to the 10,000 cap, USCIS may not grant their petition until their associate principal's U-1 visa is granted.  *Id.*  The Derivative Plaintiffs did not allege that their associated principal's petition was granted.  (*See FAC.*)  If the Court could determine with certainty from the FAC that the Derivative Plaintiffs' petitions are dependent upon a named Principal Plaintiff, then by virtue of the FAC, the Court could conclude that Derivative Plaintiffs' claim are not yet ripe because no named Principal Plaintiff's petition has been granted.  The Court would have to dismiss such Derivative Plaintiffs for lack of subject matter jurisdiction.  The FAC does not permit the conclusion whether all Derivative Plaintiffs' petitions are associated with the principal petition of a named Plaintiff whose petition has not been granted.

Accordingly, the Court enters an Order to Show Cause to ensure that it does not take action on claims over which it has no subject matter jurisdiction.  Plaintiffs bear the burden to establish jurisdiction, and accordingly, the Court orders Plaintiffs to respond to the Order to Show Cause first.

## IV.   FAILURE TO STATE A CLAIM FOR RELIEF

Defendant also moves to dismiss the FAC for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F. 2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F. 3d 1246, 1249 (9th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

Grounded on 5 U.S.C. §§ 555(b), 706, Plaintiffs allege two theories of their APA claim to compel agency action: (1) USCIS wrongfully "skipped" them in the order of

processing U visas, in other words, Plaintiffs' petitions should have been adjudicated before others already adjudicated that were filed later than Plaintiffs, and (2) USCIS has unreasonably delayed the review and adjudication of their petitions.  (*FAC* 3, 5 at ¶ 28, 14–16.)

Under the APA, an agency shall, with "due regard for the convenience and necessity of the parties or their representatives and within a reasonable time . . . proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Section 706(1) of the APA grants courts authority to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Plaintiffs first allege that Defendant violated the APA by unlawfully withholding final decisions on Plaintiffs' petitions because she failed to adjudicate U-visa petitions "from oldest to newest," in compliance with 8 C.F.R. § 214.14(d)(2), and Defendant decided later-filed petitions before those of Plaintiffs. (*FAC* at 14–15.)  Second, Plaintiffs allege that Defendant violated the APA by unreasonably delaying final adjudication of the petitions under the five *TRAC* factors, set forth in *Telecom. Res. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). [5]  (*FAC* at 15.)  With respect to the unreasonable delay allegations, Plaintiffs claim that (1) no rule sets the amount of time for USCIS to issue a U visa and (2) even if the time for issuance is governed by the regulatory waiting list created by 8 C.F.R. § 214.14(d)(2), USCIS does not comply with that rule.  Plaintiffs allege that USCIS's processing is arbitrary and not uniform.  (*FAC* at 15.)

---

[5] The five factors announced in *Telecomm. Res. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984), are used to determine whether agency delay is unreasonable.  Plaintiffs allege that the *TRAC* factors favor them.  Other district courts have addressed the *TRAC* factors to resolve a Rule 12 challenge to a delay complaint, *Assadian v. Oudkirk*, No. 22-cv-921-RBM-BGS, 2023 U.S. Dist. LEXIS 170892 (S.D. Cal. Sep. 25, 2023); *Ferro v. Mayorkas*, No. 23-cv-2033-SB-MRW, 2023 WL 4291841, 2023 U.S. Dist. LEXIS 106722 (C.D. Cal. June 16, 2023), or a motion for preliminary injunction, *Jain v. Renaud*, No. 21-cv-3115-VKD, 2021 WL 2458356, 2021 U.S. Dist. LEXIS 113113 (N.D. Cal. June 16, 2021). Defendant did not raise this argument in its Rule 12 motion, and the Court expresses no opinion on it.

Challenging the sufficiency and legal propriety of the APA claims, Defendant argues that Plaintiffs cannot state a claim for unlawful withholding because they improperly base their claim on factual allegations that they were skipped over or processed out of order, allegations that Defendant argues are speculative and based on unreasonable inferences.  Whether Defendant skipped over Plaintiffs' petitions or processed their petitions out of order is a question of fact that cannot be resolved at this stage of proceedings where there is no declaration or evidence from Defendant regarding the applicability of the regulatory waiting list to the Plaintiffs.  Defendant offers multiple factual disputes in support of its 12(b)(6) motion that cannot be resolved on this motion and absence of supporting declarations or exhibits.  Counsel's arguments disputing the pleading's facts are not properly considered on a Rule 12 motion.  Accordingly, Defendant failed to demonstrate that the Principal Plaintiffs' APA claim is insufficiently pled.  For the above reasons regarding jurisdiction and the Order to Show Cause, the Court reserves any consideration of the Derivative Plaintiffs' APA claim until such time as jurisdiction is demonstrated.

Finally, Plaintiffs allege a cause of action distinct from their APA claim for attorney fees under EAJA.  Their EAJA cause of action may not proceed as a separate cause of action.  Instead, their request for attorney fees survives Defendant's motion as a legal basis for recovery of fees and expenses as permitted by law.  "EAJA does not provide an independent cause of action for litigants in federal court; instead, it simply 'authorizes the payment of fees to the prevailing party in an action against the United States.'"  *Thomas v. Paulson*, 507 F. Supp. 2d 59, 62 n.2 (D.D.C. 2007) (quoting *Scarbrough v. Principi*, 541 U.S. 401, 405 (2004)).  "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees . . . in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust."  *Id.* at § 2412(d)(1)(A).  Plaintiffs' prayer for

EAJA fees stands or falls with their APA claim.  Because the APA claims of some Plaintiffs survive the motion to dismiss, their request for EAJA fees survive.  To the extent that Plaintiffs plead EAJA fees as a cause of action, that claim is **DISMISSED** for failure to state a claim upon which relief may be granted.

**V.    CONCLUSION**

For the foregoing reasons, the Court

- **GRANTS IN PART** the Rule 12(b)(1) motion to dismiss as to individual Plaintiffs who received final decisions on their U visa petitions; and, accordingly, **DISMISSES** for lack of subject matter jurisdiction the claims of Plaintiffs Praveen Salota, Sandip Chaudhari, and Manuel Aziza Barrera;

- **DENIES IN PART** the Rule 12(b)(1) motion to dismiss as to the remaining Principal Plaintiffs and **CONTINUES** the Rule 12(b)(1) motion with respect to Derivative Plaintiffs for later consideration in compliance with this Order;

- **ORDERS** the parties to **SHOW CAUSE** why the Court should not dismiss for lack of subject matter jurisdiction or failure to state a claim, the Derivative Plaintiffs in the absence of an allegation that their associated principal petition has been granted a U-1 visa.  In so doing, the parties may also address any Rule 12(b) argument that remains unresolved by this Order.  Accordingly, Plaintiffs may file a memorandum brief on or before **February 27, 2024**, not to exceed five pages excluding declarations or exhibits.  Defendant may file a response memorandum, not to exceed five pages excluding declarations or exhibits, within **14 days** of the date Plaintiffs file their memorandum.  If Defendant files a response memorandum, Plaintiffs may reply within **7 days** of the opposition's filing with a memorandum brief not to exceed three pages.  If Plaintiffs do not timely file a memorandum brief, Defendant may file a memorandum brief on or before **February 29, 2024**.  There shall be no personal appearances or oral argument pursuant to Local Civil Rule 7.1(d.1);

- **DENIES IN PART**, without prejudice to further argument permitted by this Order to Show Cause, Defendant's Rule 12(b)(6) motion to dismiss the APA cause of action; and

- **GRANTS IN PART** Defendant's Rule 12(b)(6) motion to dismiss the alleged second EAJA cause of action, as a distinct cause, but permits to proceed Plaintiffs' request for EAJA fees on the basis of Plaintiffs' APA cause of action.

**IT IS SO ORDERED.**

Dated:  February 5, 2024

_____
Hon. Thomas J. Whelan
United States District Judge

23-cv-1058-W-KSC